UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYPAL, INC., et al., | Case No.  25-cv-10448-PCP |
| Plaintiffs, | |
| v. | **ORDER RE: MOTIONS TO DISMISS** |
| | Re: Dkt. Nos. 34, 37 |
| ANDERSON CARGO SERVICES, LLC, et al., | |
| Defendants. | |

Like a classic first-year Civil Procedure exam, this case concerns damage to goods being shipped across state lines. Plaintiff PayPal, Inc. (a California corporation) contracted with defendant Anderson Cargo Services (a Minnesota LLC doing business as "DataTrec") to transport certain goods from Utah to Arizona. PayPal and DataTrec executed a master services agreement (MSA) that included a forum-selection clause stating: "The Parties consent to the jurisdiction of all federal and state courts in California, and agree that venue shall lie exclusively in Santa Clara County, California." The MSA also provided that "any subcontract will be subject to the terms of this Agreement." Rather than transport PayPal's goods itself, DataTrec subcontracted with LoadSmart (an Illinois company) to perform that work. LoadSmart, in turn, subcontracted with defendant EF Corporation (a Pennsylvania corporation). After PayPal's goods were allegedly damaged while in transit between Utah and Arizona, PayPal commenced this action against both DataTrec and EF, asserting claims under the federal Carmack Amendment, 49 U.S.C. § 14706, and state common law. DataTrec then filed similar cross-claims against EF.

EF now moves to dismiss both PayPal's claims and DataTrec's cross-claims on the ground that the Court lacks personal jurisdiction over EF. PayPal and DataTrec both argue that they have established that EF is subject to specific personal jurisdiction. In the alternative, they argue that

they have established at least a colorable basis for personal jurisdiction such that they are entitled to jurisdictional discovery. Finally, they request, if the Court finds that it lacks personal jurisdiction over EF and denies jurisdictional discovery, that the Court sever their claims against EF and transfer them to the District of Arizona.

For the reasons below, the Court finds that PayPal and DataTrec have not established that the Court has personal jurisdiction over EF, nor even a colorable basis for personal jurisdiction that might warrant jurisdictional discovery. The Court therefore severs PayPal's claims against EF and orders that the severed claims be transferred to the United States District Court for the District of Arizona.[1]

## ANALYSIS

### I. PayPal and DataTrec have not established a basis for exercising personal jurisdiction over EF.

EF moves to dismiss PayPal's claims and DataTrec's cross-claims against it for lack of personal jurisdiction. Because EF's "motion[s] [are] based on written materials rather than an evidentiary hearing," PayPal and DataTrec "need only make a *prima facie* showing of jurisdictional facts to withstand the motion[s]." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). The Court must take uncontroverted allegations in the complaint as true but may not assume the truth of allegations that are contradicted by affidavit. *Id.*

"A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)). Because California's long-arm statute authorizes state courts to exercise personal jurisdiction to the full extent permitted by the due-process clause, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), "the statutory question here collapses into the constitutional one: [the] court … can exercise jurisdiction over [PayPal and DataTrec]'s claims

---

[1] In its motions to dismiss, EF also argues that PayPal and DataTrec's state common-law claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they are preempted by the Carmack Amendment. Because the Court concludes that it lacks personal jurisdiction over EF, it need not (and indeed cannot) resolve these merits arguments.

2

against [EF] if doing so is consistent with the Fourteenth Amendment." *Yamashita*, 62 F.4th at 502.

"The Supreme Court's due process precedents have 'recognized two kinds of personal jurisdiction: general and specific jurisdiction." *Id.* (citation modified) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). PayPal and DataTrec do not argue that EF is subject to general jurisdiction in California. That is for good reason: "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporation, that is generally "its place of incorporation and principal place of business," *id.*, both of which are in Pennsylvania for EF.

Instead, PayPal and DataTrec argue that EF is subject to specific jurisdiction in California. Where "[g]eneral personal jurisdiction permits a court to hear any and all claims brought against a defendant concerning any of the defendant's activity anywhere in the world," *Yamashita*, 62 F.4th at 503 (citation modified), specific jurisdiction subjects a party to suit "only as to a narrower class of claims." *Ford*, 592 U.S. at 359. "For an exercise of specific personal jurisdiction, the due process clause requires, *inter alia*, that the defendant [1] 'take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State,' and [2] that the plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Yamashita*, 62 F.4th at 503 (quoting *Ford*, 592 U.S. at 359). Here, PayPal and DataTrec have not made a *prima facie* showing of either requirement.

### A.    Purposeful Availment

To have purposefully availed itself of the laws of California, EF "must have deliberately reached out beyond its home—by, for example, exploiting a market in [California] or entering a contractual relationship centered there." *Ford*, 592 U.S. at 359 (citation modified). PayPal and DataTrec argue that EF did so in three ways.

First, DataTrec argues that EF has purposefully availed itself of California law merely because it is licensed by the Federal Motor Carrier Safety Administration to operate as an interstate motor-carrier and/or broker in the contiguous United States. In DataTrec's view, "any …

3

FMCSA licensee could reasonably anticipate being haled into one of the lower 48 states in which [it] has operating authority." But the only authority DataTrec cites for that proposition is a case concluding that a FMCSA-licensed broker was subject to specific personal jurisdiction in Kansas where plaintiff's claims related to freight that "was damaged during shipment and *while in the state of Kansas.*" *Brandi v. Belger Cartage Serv., Inc.*, 842 F. Supp. 1337, 1340 (D. Kan. 1994) (emphasis added). As DataTrec concedes, the goods here were neither transported through nor damaged in California.

Second, both PayPal and DataTrec argue that EF has purposefully availed itself of California law by operating a service center in Colton, California. The only available evidence of that service center is a page on EF's website titled "Service Center Locator" that lists a service center in Colton.[2] On that webpage, the center is labelled "West Motor Freight Colton – TWW."[3] As EF's associate general counsel attested, "TWW – Delta Motor Lines" was an agent through which "EF[] formerly operated a service center in Colton, California."[4] But "EF[] ceased allowing agents to operate under EF[]'s authority while maintaining offices in California … in 2020," and EF "canceled all leases with owner operators domiciled in California" that same year.[5] Possibly because of those changes, EF's associate general counsel represents that the TWW-run "service center closed its California operation in 2020 and moved to Nevada."[6] Thus, according to the sworn declaration of EF's associate general counsel, EF's website is an inaccurate relic of its agent's pre-2020 operation of a California service center that no longer exists, and for which the telephone number and email address listed on the website "are disconnected" or "inactive."[7] Now, EF "employs no personnel based in California, has no offices in California, and owns no property in California."[8] Given the unrebutted attestation of EF's associate general counsel that the company's agent last operated any service center in California six years ago, and at least three

---

[2] *See* Hollister Decl., Exhibit D, Dkt. No. 39-4, at 2; Hollister Decl., Exhibit F, Dkt. No. 39-6, at 3.
[3] *See* Hollister Decl., Dkt. No. 39 ¶ 6.
[4] Supp. Haskins Decl., Dkt. No. 49, ¶ 8.
[5] *Id.* ¶ 7.
[6] *Id.* ¶ 10.
[7] *Id.* ¶¶ 12–13.
[8] Haskins Decl., Dkt. No. 35, ¶ 5.

years before the events underlying this action, a single webpage continuing to list the service center (with a defunct telephone number and email address) cannot establish a *prima facie* basis for exercising personal jurisdiction.

Third, PayPal argues that EF has purposefully availed itself of California law by offering services in and marketing those services to markets in California. As evidence, PayPal again points to EF's website, but the statements therein do not suggest any meaningful connection with California. Quite the opposite: EF's website states that it "services 'core customers' from Maine to Virginia and the East coast to Eastern Ohio" and "throughout the East coast and as far West as Chicago."[9] So EF's core service areas are more than a thousand miles from the California border. The only language on EF's website relating to service west of the Mississippi states that "[t]he Domestic Division of *Evans Delivery Company, Inc.* has a network of locations strategically located throughout the 48 states."[10] But PayPal does not allege that EF does business under the name "Evans Delivery Company." That is because, as EF explains in its reply, it does not. Instead, "Evans" refers to the "Evans Network of Companies," of which EF is merely one member.[11] The fact that EF is a member of a network of companies, some of which service California, does not suggest that EF itself offers services within the state. Nor does the mere mention that EF's broader network of partners services all 48 contiguous states amount to purposeful availment of the benefits of California law by EF.

PayPal and DataTrec have not established purposeful availment. The Court lacks personal jurisdiction over EF on that basis alone.

### B.     Arising out of or related to

Even if PayPal and DataTrec made a *prima facie* showing that EF had purposefully availed itself of the benefits of California law, they have not demonstrated that their claims against EF "arise out of or related to" EF's contacts with this forum.

Claims "arise out of" conduct if there is a causal relationship between the conduct and the

---

[9] Hollister Decl., Exhibit B, Dkt. No. 39-2 at 2; Hollister Decl., Exhibit C, Dkt. No. 39-3 at 2.
[10] Hollister Decl., Exhibit B, Dkt. No. 39-2 at 2; Hollister Decl., Exhibit C, Dkt. No. 39-3 at 2.
[11] Supplemental Haskins Decl., Dkt. No. 48, ¶ 17.

United States District Court
Northern District of California

United States District Court
Northern District of California

claims, *see LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022), which is undisputedly not the case here. But claims may "relate[] to" in-forum activities even "without a causal showing." *Id.* (quoting *Ford*, 592 U.S. at 362). For that reason, "when a corporation has 'continuously and deliberately exploited a State's market,'" it may "'be[] haled in to that State's courts' to defend actions 'based on' products causing injury there," even if the product was not manufactured or sold in that state. *Ford*, 592 U.S. at 364 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As the Supreme Court has explained, however, "[t]hat does not mean anything goes"—"the phrase 'relate to' incorporates real limits." *Ford*, 592 U.S. at 362. The Ninth Circuit has held, for example, that an aircraft-engine manufacturer was not subject to a product-liability suit stemming from an engine failure in a state where the defendant allegedly operated four repair shops but where the in-state shops did not work on the particular type of engine at issue in the case. *See LNS*, 22 F.4th at 863. And the Ninth Circuit rejected a plaintiff's argument that a manufacturer of raw materials used in a battery that exploded was subject to the resulting product-liability suit in a state merely because the materials had been shipped through that forum. *See Yamashita*, 62 F.4th at 506–07.

Here, PayPal and DataTrec have not established more than a tenuous connection between their claims and EF's potential forum contacts. As in *LNS*, there is no evidence in the record as to the types of contracts or shipments EF's former California service center handled—certainly nothing suggesting that it dealt with cases similar to PayPal and DataTrec's. And it is undisputed that the freight at issue here was not transported through California, making the lack of personal jurisdiction even clearer than in *Yamashita*. In essence, PayPal and DataTrec's argue that EF's operation of a single service center in California subjects it to suit in California for all its transport and brokering activities outside the state forevermore. Such a broad understanding of what claims "relate to" a defendant's forum contacts would collapse the distinction between general and specific personal jurisdiction and fail to "adequately protect defendants foreign to [the] forum." *Ford*, 592 U.S. at 362.

PayPal and DataTrec's failure to establish that their claims arise out of or relate to EF's

purported contacts with California provides an independent basis to conclude that the Court lacks personal jurisdiction.

## II.    Jurisdictional discovery is inappropriate.

PayPal and DataTrec request that the Court grant them leave to conduct jurisdictional discovery concerning (1) EF's activities within (or directed toward) California and (2) EF's knowledge of the MSA and its forum selection clause. The Court denies the request.

As PayPal and DataTrec recognize, mere speculation that EF may be subject to personal jurisdiction does not entitle them to jurisdictional discovery. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of request for jurisdictional discovery that was "based on little more than a hunch that it might yield jurisdictionally relevant facts"). Instead, "[c]ourts require a plaintiff to establish a 'colorable' basis for personal jurisdiction before granting jurisdictional discovery." *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *15 (N.D. Cal. Jan. 19, 2022). "This 'colorable' showing should be understood as something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Id.* (citation modified); *see also Boschetto*, 539 F.3d at 1020; *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022).

PayPal and DataTrec have not established even a colorable basis for personal jurisdiction. They speculate that EF might have consented to the forum selection clause in the MSA if EF were aware of that agreement. Yet they have provided no evidence suggesting that EF knew of the MSA. And while PayPal and DataTrec have offered at least some evidence suggesting that EF once operated a service center in California, the existence of such a service center would at most establish that EF purposefully availed itself of this forum. As discussed above, it would not show that PayPal and DataTrec's claims against EF arise out of or relate to EC's operation of that service center, as is required to establish personal jurisdiction. So there is no basis to grant jurisdictional discovery here.

## III.    The Court severs and transfers PayPal and DataTrec's claims against EF.

Finally, defendants request that, rather than dismiss their claims against EF, the Court

sever those claims and transfer the claims to the United States District Court for the District of Arizona.

Under 28 U.S.C. § 1631, if "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action … to any other … court … in which the action or appeal could have been brought at the time it was filed or noticed." Transfer is generally in the interest of justice "unless it is apparent that the matter … is frivolous or was filed in bad faith. This is a low bar[.]" *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015).

Here, defendants argue that transfer is in the interest of justice because the action is not frivolous or filed in bad faith. And dismissing their claims against EF instead of transferring the claims might preclude defendants from seeking any relief from EF, as the claims may now be time-barred. EF does not oppose this request. The Court agrees that transfer is in the interest of justice and orders that PayPal's claims and DataTrec's cross-claims against EF be transferred.

### CONCLUSION

For the foregoing reasons, EF's motions to dismiss PayPal's claims and DataTrec's cross-claims for lack of personal jurisdiction are GRANTED. PayPal and DataTrec's requests for jurisdictional discovery are DENIED. The Court orders that PayPal's claims and DataTrec's cross-claims against EF be severed from the other claims in this action and that the severed claims be transferred to the United States District Court for the District of Arizona.

**IT IS SO ORDERED.**

Dated: July 10, 2026

P. Casey Pitts
United States District Judge